# United States Court of Appeals
## For the First Circuit

No. 07-2341

MICHELLE MONTEAGUDO,

Plaintiff, Appellee,

v.

ASOCIACIÓN DE EMPLEADOS DEL ESTADO LIBRE ASOCIADO
DE PUERTO RICO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Torruella, Baldock,[*] and Howard,
Circuit Judges.

Jorge Martínez-Luciano, with whom Carmen Edith Torres-Rodríguez and Law Offices of Pedro Ortiz-Álvarez, PSC, were on brief for appellant.
Juan Rafael González-Muñoz, with whom González Muñoz Law Offices, P.S.C., María E. Margarida-Franco, Margarida Franco Law Office, and Carlos M. Vergne Law Offices, were on brief for appellee.

January 26, 2009

---

[*] Of the Tenth Circuit, sitting by designation.

**TORRUELLA**, **Circuit Judge**.  Michelle Monteagudo brought suit alleging sexual harassment claims under federal and Puerto Rico law against her former employer, Asociación de Empleados del Estado Libre Asociado de Puerto Rico ("AEELA"),[1] in the United States District Court for the District of Puerto Rico.  On June 1, 2007, a jury found that Monteagudo was subjected to sexual harassment in violation of Title VII of the Civil Rights Act and Puerto Rico Laws 17, 69, and 100, and awarded her compensatory and punitive damages.  AEELA moved for judgment as a matter of law on the Faragher-Ellerth affirmative defense pursuant to Federal Rule of Civil Procedure 50 and also moved for a new trial and remittitur of the damages award pursuant to Federal Rule of Civil Procedure 59.  AEELA appeals the district court's denial of both these motions as well as certain evidentiary and discovery rulings made during trial.  After careful consideration, we affirm.

## I.  Background

### A.  Monteagudo's Experience at AEELA

Monteagudo started working at AEELA in 1999 as a secretary in the Human Resources department.  At that time, she was a non-permanent employee, substituting for the permanent secretary who was out on maternity leave.  Monteagudo was supervised by Juan Francisco Arce-Díaz ("Arce"), a payroll, fringe benefits, and compensation manager for AEELA.  At trial, Monteagudo testified

---

[1]  AEELA is a non-profit savings and loans organization.

that during her time as a substitute, Arce "would look at [her] as if he was appraising [her]." However, she "didn't give it much importance" because she did not view Arce's conduct to be that serious.

Monteagudo testified that Arce's conduct continued until Arce's permanent secretary returned from maternity leave, at which point Monteagudo stopped working in the Human Resources department. On October 2, 2000, after stints in AEELA's legal collections and legal affairs divisions, Monteagudo returned to the Human Resources department as a permanent employee. Once there, Monteagudo claimed that Arce engaged in inappropriate conduct towards her. For example, she remarked that Arce would come to her work station at least once a day where "he would stop and touch [her] on the shoulder." Monteagudo stated that she resisted Arce's advances by "throw[ing] his hand backwards so he'd leave [her] alone." She also complained that Arce would "invit[e] [her] constantly to go out together" with co-workers on double dates.

Monteagudo testified to the unpleasantness she felt as a result of Arce's conduct: "How can I feel except bad? They were treating me like a piece of meat. I wouldn't like to go to work . . . I didn't like to go into the office, because I knew what I would be involved and engaged in every day there."

On one such day, José Francisco Figueroa-Cana ("Figueroa"), a messenger for AEELA since 1996, witnessed Arce

"plac[ing] his hand on [Monteagudo's] hip" in "an undesirable action." When he discussed this incident with Monteagudo, she told him that "that was something that normally took place . . . that [Arce] would always try to seek a way so he could touch her." Figueroa testified that he was uncertain about what recourse Monteagudo should take because this was a matter that was "extremely difficult and quite delicate" given the people involved. Even though Figueroa was a union delegate, he decided against bringing the matter up to the union president because "it was extremely difficult to bring forth something like this dealing with who we dealt with," the union was a "very weak institution within AEELA," and because the union president had a "friendly relationship" with Orlando Vargas-López ("Vargas"), AEELA's Director of Human Resources and Labor Relations.

Monteagudo, perhaps partly as a result of her conversation with Figueroa, did not report Arce's conduct to her superiors as required by AEELA's sexual harassment policy.[2] This policy was in effect and distributed to Monteagudo while she was a

---

[2]  Two provisions of AEELA's sexual harassment policy are relevant to this appeal.  Section 3.2 of the policy states: "An employee who feels he has been sexually harassed at work in any way, should present his complaint to the Human Resources Department.  If the alleged harasser should be this person, or anyone related or close to him, then the complaint must be presented directly to the Association's Executive Director."  Section 3.3 of the policy states: "It is the responsibility of any employee who witnesses a sexual harassment act, or if any other employee has complained of being a victim of sexual harassment, to immediately inform the appropriate official."

permanent employee. At trial, Monteagudo explained that she did not report the sexual harassment "[b]ecause the person I needed to complain with were all friends." She added: "Either it be the executive director or the human resources director, they're all friends amongst themselves. We're talking about some managerials [sic] versus an employee who virtually had started working a few days before." She claimed that the Executive Director, Pablo Crespo-Claudio ("Crespo"), was friends with Vargas and Arce "[b]ecause of conversations held by Orlando Vargas and Francisco Arce themselves," noting that "I tend to understand that if some people go out together to drink liquor, they're friends who go out to be together." Crespo admitted in his testimony that he may have gone out for drinks with Vargas and Arce.

Monteagudo testified that Arce's inappropriate behavior towards her continued for several months leading up to an incident during a group outing to a local bar, where in the parking lot, Arce "pulled [her] towards him to try to kiss [her]." Monteagudo pushed him away that evening, but testified that when she returned to work the following Monday after the incident "the attitude displayed towards [her] by Mr. Vargas and Mr. Arce" was "different" and that the additional work given to her was excessive. Also, when she complained to Vargas that she was performing two positions simultaneously, in addition to assisting colleagues from other

divisions, Vargas "slammed the desk very hard and told [her] that if [she] filed a complaint, the next day [she] would be dismissed."

At trial, Monteagudo described her work conditions as intolerable due to the fact that her superiors did not permit "anyone at all to stop over to talk to [her], even to just say good morning." Further, she explained the emotional toll AEELA's actions took on her: "[E]very evening I'd be crying, I would leave work crying, because there was a constant scolding for everything, everything I did was wrong. Everything." Thus, Monteagudo stated that she was left with no choice but to resign, resulting in what the jury later found to be a constructive discharge: "Obviously, if somebody is putting so much pressure on you and threatening to kick you out if you complain before the union, obviously that person doesn't want to have you there anymore. And that's why I resigned."

**B. AEELA's Motions**

At the end of Monteagudo's presentation of her argument, AEELA orally moved for judgment as a matter of law under Rule 50 stating the following: "At this time we want to move for judgment as a matter of law, not on the merits of the case, which are obviously subject to credibility issues for the jury, but on the subject of [the] affirmative defense limited by the Supreme Court in the case of Ellerth and Faragher regarding vicarious liability by an employer." AEELA noted that its motion was based on this

"single discrete issue." The district court denied AEELA's motion. At the close of all evidence and before the case went to the jury, AEELA renewed its motion under "the Faragher issue" stating that "[p]retty much in our case in chief, nothing further was added, as far as factually towards this defense. It would be the same arguments of law and fact, but we need to raise it to preserve it." The district court again denied AEELA's motion.

On June 1, 2007, the jury found Monteagudo was subjected to sexual harassment in violation of Title VII and Puerto Rico Laws 17, 69, and 100,[3] and awarded her compensatory and punitive damages.[4] On June 15, 2007, AEELA again filed a motion for

_____

[3] Law 17 prohibits sexual harassment in employment. 29 P.R. Laws Ann. § 155. Law 69 prohibits employment discrimination on account of gender. 29 P.R. Laws Ann. § 1321. Law 100 is analogous to Title VII and prohibits discrimination on the basis of age, race, color, sex, social or national origin, social condition, political affiliation, political or religious ideology. 29 P.R. Laws Ann. § 146.

[4] The jury found by a preponderance of evidence that (1) "[Monteagudo] was constructively discharged from her employment at AEELA specifically as a consequence of sexual harassment; (2) "AEELA approved an anti-sexual harassment policy which provided the procedure for employees to channel their claims and that the policy was disseminated among the employees"; (3) Monteagudo was not unreasonable in her "fail[ure] to use the procedure provided in the anti-sexual harassment policy in effect at AEELA; and that (4) "she was subjected to a sexually hostile work environment in violation of Puerto Rico law."

The jury also found that the amount of compensatory damages that "Monteagudo suffered as a proximate result of the sexually hostile work environment to which she was subjected by AEELA" totaled $333,000 and that Monteagudo should be awarded $300,000 in punitive damages.

-7-

judgment as a matter of law on the basis that Monteagudo was not subjected to a "severe or pervasive" hostile work environment and that AEELA met the burden of proof required in the <u>Faragher-Ellerth</u> defense. AEELA argued that no reasonable jury could find that Monteagudo's failure to use the procedures specified by AEELA's sexual harassment policy was reasonable. AEELA also moved for a new trial and for remittitur of the damages award.

The district court denied AEELA's motion for judgment as a matter of law, noting first that AEELA did not object to the court's instruction on the <u>Faragher-Ellerth</u> defense. The district court then offered the following reasons for its denial of AEELA's motion:

> At trial, Plaintiff testified that her supervisor, Arce, sexually harassed her by repeatedly touching her on the shoulders, asking her out, and one occasion trying to kiss her. She also testified that Vargas, Defendant's Human Resources Director, was aware of Arce's unlawful behavior and was an active participant in the harassment. Vargas, on another occasion, had threatened to fire Plaintiff if she complained about excessive workload. Finally, Plaintiff testified that Pablo Crespo, Defendant's Executive Director, was friends with Arce and Vargas. Plaintiff's

---

On the same day, the district court entered an order modifying the judgment because the jury did not apportion the compensatory damage award between the Puerto Rico and federal Title VII claims. Accordingly, the district court ruled that it "allocates $1 of the compensatory damages to the Title VII claim and the remaining $332,999.00 to the Commonwealth claims" and "[p]ursuant to the damages provisions of Puerto Rico Laws 17, 69, and 100, the court will double the compensatory damages under the Commonwealth claims." As a result, Monteagudo's total award was $965,999.

testimony was bolstered by Figueroa Cana, another of Defendant's employee [sic], who said during trial that he had told Plaintiff that she did not have a real opportunity of obtaining relief because of the high ranking officers involved in the harassment and cover up. In light of the above, the court cannot conclude that no reasonable jury could have found that Plaintiff acted reasonably when she failed to follow Defendant's anti-sexual harassment policy.

In a separate order, the district court denied AEELA's motion for a new trial on damages noting that "the verdict of $965,999.00 is in part the result of Puerto Rico Laws 17, 69, and 100, which double the plaintiff's compensation." AEELA appeals the district court's ruling on these two motions as well as certain discovery and evidentiary rulings at trial.

## II. **Discussion**

### A. **AEELA's Motion for Judgment as a Matter of Law**

#### 1. **Standard of Review**

Our review of a denial of a motion for judgment as a matter of law under Fed. R. Civ. P. 50 is de novo, "viewing the evidence in the light most favorable to the nonmoving party." Marcano Rivera v. Turabo Med. Ctr. P'ship, 415 F.3d 162, 167 (1st Cir. 2005) (quoting Tapalian v. Tusino, 377 F.3d 1, 5 (1st Cir. 2004)). We note that "[a] party seeking to overturn a jury verdict faces an uphill battle," id., and that our "review is weighted toward preservation of the jury verdict . . . ." Crowe v. Bolduc, 334 F.3d 124, 134 (1st Cir. 2003). "Courts may only grant a

judgment contravening a jury's determination when the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party."  Marcano Rivera, 415 F.3d at 167 (quoting Rivera Castillo v. Autokirey, Inc., 379 F.3d 4, 9 (1st Cir. 2004)).

Here, although AEELA makes several claims on appeal of the denial of its Rule 50 motion,[5] we consider preserved only its claim regarding the Faragher-Ellerth affirmative defense.  As we recently reasoned:

> A motion under Fed. R. Civ. P. 50(a) must "specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a)(2). The motion "must be sufficiently specific so as to apprise the district court of the grounds relied on in support of the motion." Zachar v. Lee, 363 F.3d 70, 73 (1st Cir. 2004) (citing Correa v. Hosp. San Francisco, 69 F.3d 1184, 1196 (1st Cir. 1995)). Such a motion "preserves for review only those grounds specified at the time, and no others." Id. (quoting Correa, 69 F.3d at 1196) . . . But, "[a]s the name implies, a renewed motion for judgment as a matter of law under Fed. R. Civ. P. 50(b) is bounded by the movant's earlier Rule 50(a) motion." Correa, 69 F.3d at 1196. "The movant cannot use such a motion as a vehicle to introduce a legal theory not distinctly articulated in its close-of-evidence motion for a directed verdict." Id.

---

[5]  Although raised in an inartful manner on appeal, we consider infra AEELA's challenges to the district court's rulings on certain evidentiary and discovery issues at trial.

Parker v. Gerrish, 547 F.3d 1, 12 (1st Cir. 2008). AEELA stated that it wished to preserve only one issue in its Rule 50(a) motion; thus, the only issue that we consider pursuant to its renewed motion is whether AEELA is entitled to the Faragher-Ellerth defense.

## 2. AEELA's Affirmative Defense

We have explained the Faragher-Ellerth defense as following:

> Under Title VII, an employer is subject to vicarious liability for sexual harassment by an employee's supervisor which does not constitute a tangible employment action. But the employer may prevail if it demonstrates a two-part affirmative defense: that its own actions to prevent and correct harassment were reasonable and that the employee's actions in seeking to avoid harm were not reasonable.

Chaloult v. Interstate Brands Corp., 540 F.3d 64, 66 (1st Cir. 2008) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998)).[6]

The parties agree that the sexual harassment policy AEELA had in place was sufficient for it to meet the first prong of the defense. See Arrieta-Colón v. Wal-Mart P.R., Inc., 434 F.3d 75, 86

---

[6] In the motion for judgment as a matter of law below there was some dispute among the parties as to whether a constructive discharge constitutes a "tangible employment action" for the purposes of the Faragher-Ellerth defense. However, the district court did not address this issue in its opinion and Monteagudo does not raise this issue here.

-11-

(1st Cir. 2006) ("As to the first element of the defense, proof of an anti-harassment policy with a complaint procedure available to employees, while not necessarily dispositive, is relevant."); Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 21 (1st Cir. 2002) ("[T]he availability of the affirmative defense often will turn on whether the employer had established and disseminated an anti-discrimination policy, complete with a known complaint procedure."). Thus, Monteagudo concedes "that the only matter for consideration under the [Faragher-Ellerth] defense is the second prong of the defense."

Regarding the second prong, in Reed v. MBNA Marketing Systems, Inc., we remarked that while "[t]here is no bright-line rule as to when a failure to file a complaint becomes unreasonable . . . more than ordinary fear or embarrassment is needed." 333 F.3d 27, 35 (1st Cir. 2003). As set forth above, AEELA's sexual harassment policy states that an employee who is a victim of sexual harassment should first present her complaint to the Human Resources department, unless the alleged harasser is within or close to someone within the department. If this is the case, as it is here given our facts, the employee is required to report the sexual harassment to AEELA's Executive Director. Thus, we must determine whether a jury could conclude that Monteagudo's reasons for failing to report Arce's conduct to her superiors was unreasonable.

From our review of the record, Monteagudo presented several reasons for not reporting the sexual harassment to Vargas. Vargas admitted that he was friends with Arce. Monteagudo also testified that Vargas and Arce would often go out drinking together. Monteagudo was thus understandably reluctant to report Arce's behavior to Vargas because of the closeness of Vargas's relationship with Arce.

The more difficult question, however, is whether Monteagudo's failure to report Arce's conduct to Crespo was unreasonable on the basis of Crespo's alleged friendship with Arce and Vargas. The only evidence that Monteagudo proffers for this friendship are conversations she overheard by Vargas and Arce and the fact that Crespo testified that he may have gone out with Arce for drinks. Admittedly, Monteagudo did not establish Crespo's relationship with Arce as clearly as she established Vargas's relationship with Arce; however, as we acknowledged in Reed, "juries are supposed to be good at detecting false claims and at evaluating reasonable behavior in human situations." Id. at 37.

Further, other factors that the jury could have taken into account in deciding that it was reasonable for Monteagudo not to report to her superiors included Figueroa's advice to her that the matter was "extremely difficult and quite delicate" given the people involved, and the fact that witnesses to the alleged

-13-

harassment failed to report the sexual harassment as well.[7] In addition, there was a significant age differential between Monteagudo, 22, and Arce, 45, when the harassment occurred. Although Monteagudo was not a minor as was the plaintiff in Reed, her relative youth compared to Arce bears at least some relevance. See id. (noting that a jury could consider the trauma inflicted by a supervisor who was more than double the age of a seventeen year old whom the supervisor was alleged to have assaulted). While Monteagudo's evidence is not overwhelming, we believe that a reasonable jury could conclude that her failure to report was based on "more than ordinary fear or embarrassment" and was therefore reasonable.[8]

---

[7] Monteagudo testified that Vargas and her colleague, Marilyn Del Valle-Cruz ("Del Valle"), were aware of the sexual harassment. Although Vargas and Del Valle deny knowledge of the sexual harassment, the jury was entitled to believe Monteagudo's version given the facts surrounding the case.

[8] AEELA also maintains that a jury could not reasonably conclude that Monteagudo's failure to file a complaint with her union pursuant to the collective bargaining agreement was reasonable. We disagree. Monteagudo was advised by Figueroa, a union delegate, that filing a complaint would be futile because the matter involved people that made it "extremely difficult and quite delicate"; that the union was weak; and that the union president was friendly with Vargas. Furthermore, Monteagudo stated that the union was unresponsive to a prior complaint she had filed on an unrelated matter.

We note here AEELA's claim that Monteagudo did not produce a copy of this prior complaint during discovery, even though AEELA had requested it. AEELA contends that the district court erred by disallowing AEELA to pursue a line of questioning "directed towards discrediting Monteagudo's testimony about supposedly having filed the grievance at issue." Further, AEELA asserts that the district

-14-

## B. AEELA's Evidentiary Claim

### 1. Standard of Review

We review a trial court's decision to admit or exclude evidence for abuse of discretion. McDonough v. City of Quincy, 452 F.3d 8, 19 (1st Cir. 2006). "A district court has broad discretion to make relevancy determinations . . . ." Richards v. Relentless, Inc., 341 F.3d 35, 49 (1st Cir. 2003). Erroneous evidentiary rulings are harmless "if it is highly probable that the error did not affect the outcome of the case." McDonough, 452 F.3d at 19-20.

### 2. The Challenged Testimony

AEELA argues that the district court erred in disallowing testimony from Blanca Medina, AEELA's Director of Administrative and Legal Affairs, regarding whether AEELA had successfully employed a corrective measure in 2005 pursuant to the sexual harassment policy. Monteagudo had objected to this testimony, stating that Medina's testimony on this issue was not "pertinent at this time." Upon Monteagudo's objection, the parties approached

_____

court erred by stating that AEELA had not previously moved to compel the document. We agree with the district court that this was a discovery issue that AEELA should have addressed earlier either by way of a motion to compel or a request for sanctions under Fed. R. Civ. P. 37(c). However, even if we were to decide otherwise, any error would be harmless as the jury could have concluded that Monteagudo was reasonable in her decision not to file a complaint with the union based on the other reasons articulated above. In any event, we are hard pressed to see how AEELA was disadvantaged as the district court allowed AEELA to ask Monteagudo a series of questions about the document and its whereabouts for purposes of impeachment.

the bench and a colloquy ensued between the parties and the district court.[9] This exchange resulted in the apparent agreement by AEELA to the following instruction given to the jury immediately after the bench conference:

> The witness stated that in 2005, certain procedures were followed in another case. We're not going to go into that line of questioning. And so that what she was saying, we're not going to continue further, but let me instruct the jury that the fact that

---

[9]  The transcript of the bench conference reads as follows:

The Court:  I think I should instruct the jury -- she already gave that answer.  I should instruct the jury that the fact that in 2005 corrective measures were taken is not evidence of what happened in this case.

Mr. Martínez-Luciano [AEELA's counsel]:  The reason why I'm asking about this is because part of plaintiff's theory as stated today in opening statements . . . [is] that the proceedings in AEELA are not worth following, that they're not effective.

Mr. González-Muñoz [Monteagudo's counsel]:  No.  What I said during opening statement was that it was not followed in Michelle's case, and limited myself to this case.  It's not that [AEELA's harassment policy] is ineffective.  In this case it was not followed.  That's what I said in opening statements.

Mr. Martínez-Luciano:  It's not a theory you're going to pursue in closing arguments?

Mr. González-Muñoz:  No, no.  I'm here for Michelle's case.

The Court:  I'm not going to strike the testimony at this time. Careful with the question. Whatever she stated in 2005 is not probative of what may have happened or not happened in 2002.

Mr. Martínez-Luciano:  Okay.

-16-

> certain procedures may have been followed in 2005, they're not conclusive, they're not probative of whatever may have happened in 2002. So in that effect, in that regard, you're not to consider that statement as probative one way or the other of what may have happened in 2002.

From this exchange, it is not clear whether AEELA preserved its opposition to the court's evidentiary ruling because AEELA consented to the court's decision to give a jury instruction.[10] Assuming that AEELA has preserved the issue for appeal, however, the district court did not err by excluding the testimony on relevance grounds. Unlike other circuits, we have not required that in order to overcome the second prong of the Faragher-Ellerth affirmative defense, plaintiffs must produce evidence demonstrating "that the employer has ignored or resisted similar complaints or has taken adverse action against employees in response to such complaints." See, e.g., Leopold v. Baccarat, Inc., 239 F.3d 243, 246 (2d Cir. 2001). Here, since Monteagudo limited her argument to the application of AEELA's policy to her case, the district court was within its discretion to exclude as not relevant AEELA's attempt to show that it had taken corrective measures pursuant to the policy in 2005.

---

[10] At closing argument Monteagudo's counsel stated that AEELA's sexual harassment policy "had been proven defective." Upon AEELA's objection, the court directed Monteagudo's counsel to correct himself by explaining to the jury that any argument regarding the application of the policy's effectiveness pertains to Monteagudo only.

### C. AEELA's Motion for New Trial and Remittitur of Damages

#### 1. Standard of Review

AEELA also appeals the district court's denial of its motion for new trial or remittitur under Fed. R. Civ. P. 59. "'A district court should only grant such motions if the outcome is against the clear weight of the evidence such that upholding the verdict will result in a miscarriage of justice.'" Marcano Rivera, 415 F.3d at 171 (quoting Johnson v. Spencer Press of Me., Inc., 364 F.3d 368, 375 (1st Cir. 2004)). We review for abuse of discretion. Id.

#### 2. Damages

##### a. Compensatory Damages

"'[A] party seeking remittitur bears a heavy burden of showing that an award is grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand.'" Id. at 173 (alteration in original) (quoting Currier v. United Techs. Corp., 393 F.3d 246, 256 (1st Cir. 2004)). "[T]he Supreme Court of Puerto Rico has indicated that it 'will not intervene in the decision on the estimation of damages issued by the lower courts, unless the amounts granted are ridiculously low or exaggeratedly high.'" Id. at 172 (quoting Nieves Cruz v. Universidad de Puerto Rico, 151 P.R. Dec. 150 (2000) (certified translation)). Thus, "Puerto Rico's 'exaggeratedly high' standard echoes the federal 'grossly

-18-

excessive' standard." Id. We stress that "only infrequently -- and then, for compelling reasons -- will we, from the vantage point of an algid appellate record, override the jury's judgment as to the appropriate amount of non-economic damages to which a plaintiff is entitled." Casillas-Díaz v. Palau, 463 F.3d 77, 82-83 (1st Cir. 2006).

Here, the jury awarded Monteagudo $333,000 in compensatory damages without apportioning the award between the Puerto Rico and the Title VII claims. The jury also awarded Monteagudo $300,000 in punitive damages under Title VII. Upon Monteagudo's motion, the district court issued an order allocating $1 of the compensatory damages award to the Title VII claims and the remaining $332,999 to the claims under Puerto Rico laws 17, 69, and 100.[11] The district court then doubled the amount awarded pursuant to the Puerto Rico claims as required by Puerto Rico law, resulting in a total award amount of $965,999. See P.R. Laws Ann. tit. 29, § 155j(1); P.R. Laws Ann. tit. 29, § 146(a)(1); P.R. Laws Ann. tit. 29, § 1341(a)(1).

With respect to compensatory damages, we hold that the jury's award here of $333,000 was neither "grossly excessive" to "shock the conscience" of this court, nor was it "exaggeratedly

---

[11] "In this circuit, punitive damages may not be awarded under Title VII without the award of at least nominal compensatory damages." Rodríguez-Torres v. Caribbean Form Mfr., Inc., 399 F.3d 52, 65 (1st Cir. 2005).

high."  Admittedly the jury was generous in awarding this amount; however, the district court did not abuse its discretion in deciding that the award was proportionate to harm suffered by Monteagudo.  As we expressed above, as a result of the sexual harassment she endured for several months, Monteagudo felt "like a piece of meat" and wept every evening.  After her constructive discharge, she testified that she suffered from depression and an inability to sleep.  We note that a "verdict approved by both the jurors and the trial judge will be pared 'only if it is shown to exceed any rational appraisal or estimate of the damages that could be based upon the evidence before the jury.'"  Casillas-Díaz, 463 F.3d at 83 (quoting Dopp v. Pritzker, 38 F.3d 1239, 1249 (1st Cir. 1994)).  Given our facts and the highly deferential standard we must apply, this is not such a case.  Moreover, the jury award here is commensurate with non-economic compensatory damage awards we have upheld in other Title VII and employment discrimination contexts.[12]

---

[12]  See McDonough, 452 F.3d at 22 (upholding $300,000 compensatory damages award where "bulk of the award" was for emotional distress in the form of humiliation, damage to reputation, and strained family relations); Valentín-Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 103 (1st Cir. 2006) (upholding compensatory damages award of $705,000 on the basis of harassment and threat of reprisals where plaintiff suffered emotional damages and mental anguish such as insomnia, anxiety, guilt, and depression as well as serious economic damages); Rodríguez-Torres, 399 F.3d at 64 (upholding on plain error review emotional distress damages of $250,000 in case involving claims under Title VII, Law 69, and Law 100 where Plaintiff "experienced financial difficulties, her marriage suffered, she entered a deep depression which lasted 'for

## b. Punitive Damages

We review a preserved challenge to a punitive damages award de novo. Acevedo-García v. Monroig, 351 F.3d 547, 566 (1st Cir. 2003). Where a challenge to a punitive damages award is not preserved, as is the case here, we review for plain error. Rodríguez-Torres, 399 F.3d at 64; Chestnut v. City of Lowell, 305 F.3d 18, 20 (1st Cir. 2002). AEELA can prevail on plain error review if it demonstrates that:

> (1) an error was committed; (2) the error was
> plain (i.e.[,] obvious and clear under current
> law); (3) the error was prejudicial (i.e.[,]
> affected substantial rights); and (4) review
> is needed to prevent a miscarriage of justice,
> meaning that the error seriously impaired the
> fairness, integrity, or public reputation of
> judicial proceedings.

---

quite some time,' and, because of the depression, she had difficulty finding subsequent employment"); Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 36-37 (1st Cir. 2003) (upholding $125,000 compensatory damages award for emotional distress including stress and anxiety disorders and irritable bowel syndrome); Kerr-Selgas v. American Airlines, Inc., 69 F.3d 1205, 1214 (1st Cir. 1995) (upholding $300,000 compensatory damage award on Title VII retaliation claim before doubling of award under Puerto Rico law); see also Muñiz-Olivari v. Stiefel Labs., Inc., 496 F.3d 29, 40-41 (1st Cir. 2007) (analogizing to Title VII law and holding that pain and suffering damages of $100,000 to husband and wife each was not excessive); cf. Soto-Lebrón v. Fed. Express Corp., 538 F.3d 45, 70 (1st Cir. 2008) (holding that $1,800,000 emotional damages award on libel claim was excessive in part because "there is an identifiable legal error that is at the heart of the jury's inflated award"); Koster v. Trans World Airlines, 181 F.3d 24, 35-36 (1st Cir. 1999) (holding emotional damage award of $716,000 as excessive and reducing it to $250,000 where employer's conduct resulted in Plaintiff having trouble sleeping, anxiety, and family suffering).

Díaz-Fonseca v. Puerto Rico, 451 F.3d 13, 36 (1st Cir. 2006) (internal quotation marks omitted).

Here, we disagree with AEELA's claim that it properly preserved its challenge to the punitive damages award by filing a timely motion under Rule 59(a). In its new trial and remittitur motion, AEELA did not provide any developed argumentation as to why Monteagudo should not be entitled to punitive damages. Further, AEELA did not cite any cases for its proposition that punitive damages are unwarranted. "[T]heories not raised squarely in the district court cannot be surfaced for the first time on appeal." McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991). "This prophylactic rule requires litigants to spell out their legal theories face-up and squarely in the trial court; if a claim is 'merely insinuated' rather than 'actually articulated,' that claim ordinarily is deemed unpreserved for purposes of appellate review." Iverson v. City of Boston, 452 F.3d 94, 102 (1st Cir. 2006) (quoting McCoy, 950 F.2d at 22); see also In re Olympic Mills Corp., 477 F.3d 1, 17 (1st Cir. 2007) (holding a claim against damages award waived because "as presented to the district court . . . the argument was fatally undeveloped, comprising only four sentences, a citation to a district court opinion, and no analysis whatsoever").

Applying the plain error standard, then, we must first decide whether the district court committed an error. "Title VII

-22-

authorizes punitive damages when a plaintiff demonstrates that the defendant engaged in intentional discrimination 'with malice or reckless indifference to the federally protected rights of an aggrieved individual.'" Rodríguez-Torres, 399 F.3d at 64 (quoting 42 U.S.C. 1981a(b)(1)). In Kolstad v. American Dental Ass'n., 527 U.S. 526 (1999), the Supreme Court set forth a framework for determining the appropriateness of punitive damages. Following Kolstad, once a plaintiff has shown that "the employer acted with malicious or reckless indifference to the plaintiff's federally protected rights," "she then must establish a basis for imputing liability to the employer." Rodríguez-Torres, 399 F.3d at 64. We have stated that "the plaintiff may meet this burden by showing that the employee who discriminated against her was a managerial agent acting within the scope of his employment." Id. "[E]ven if the plaintiff makes these showings, the employer still may avoid punitive liability by showing that it engaged in good faith efforts to implement an anti-discrimination policy." Id. "Demonstrating good faith compliance is an affirmative defense, and the burden of proof therefore rests with the employer." Id.

Here, a reasonable jury could conclude that Arce was acting in a managerial capacity when engaging in the acts of sexual harassment. Also, as a supervisor, Arce should have been aware that his actions were against AEELA's sexual harassment policy and federal law. A closer question is whether AEELA was entitled to

-23-

its affirmative defense of good faith compliance, especially in view of the jury's finding that AEELA had satisfied the first prong of its Faragher-Ellerth defense. The question before us then is whether the fact that AEELA had a sexual harassment policy in place that was disseminated to its employees was sufficient to show "good faith compliance" in order to avoid punitive damages.

We have stated that while "a written non-discrimination policy is one indication of an employer's efforts to comply with Title VII. . . . a written statement, without more, is insufficient to insulate an employer from punitive damages liability." Romano v. U-Haul Int'l, 233 F.3d 655, 670 (1st Cir. 2000). From our review of the record, AEELA has not provided sufficient proof that it had in place an "active mechanism for renewing employees' awareness of the policies through either specific education programs or periodic re-dissemination or revision of their written materials";[13] "testimony by appellants' witnesses that indicated that supervisors were trained to prevent discrimination from occurring;" or "examples in which their anti-discrimination policies were successfully followed."[14] Id.

[13] Notably, Monteagudo testified that she had never been offered a seminar on sexual harassment and that she was unaware if any sexual harassment seminars had been given to her supervisors.

[14] We acknowledge that AEELA was rebuffed by the district court in its attempt to show how its policy was successfully implemented in 2005. However, as we noted in assessing AEELA's evidentiary claim above, this evidence was not proffered to show that AEELA should not have been liable for punitive damages. Rather, AEELA attempted

-24-

(providing a non-exhaustive list of ways an employer could demonstrate good faith compliance).  While having all of these factors is not necessary to qualify for the defense, see id., AEELA has not provided sufficient evidence that it fulfilled any of these factors.  Thus, the district court did not commit plain error in upholding the punitive damages award and denying a new trial on damages.

### III.  **Conclusion**

For the foregoing reasons, the district court judgment is affirmed.

**Affirmed**.

---

to introduce Medina's testimony in order to bolster its Faragher-Ellerth defense.  This was evidence which the district court was within its discretion to exclude.  Even if the district court had considered the 2005 corrective measure AEELA had employed pursuant to its policy, the district court still did not commit plain error in upholding the punitive damages award.  This is because AEELA failed to provide sufficient evidence of other indicators of good faith compliance and because the 2005 corrective measure occurred three years after the sexual harassment in this case.  See id.