# United States Court of Appeals
## For the First Circuit

No. 05-2618

HÉCTOR MUÑIZ; SONIA CRESPO;
MOISÉS MUÑIZ-CRESPO,
Plaintiffs, Appellees,

v.

DR. SALVADOR ROVIRA-MARTINÓ,
Defendant, Appellant,

HOSPITAL SAN ANTONIO, INC., d/b/a HOSPITAL SAN ANTONIO;
A-Z INSURANCE COMPANIES,
Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella, Circuit Judge,
and Cyr, Senior Circuit Judge.

Erick Morales-Pérez, for appellant.
David Efron, with whom Kevin G. Little and Law Offices David
Efron, were on brief, for appellees.

June 22, 2006

**TORRUELLA**, **Circuit Judge**.  On February 6, 2002, Moisés Muñiz-Crespo ("Moisés"), a minor, and his parents, Héctor Muñiz and Sonia Crespo (collectively "plaintiffs"), brought this diversity action in the United States District Court for the District of Puerto Rico, alleging medical malpractice against defendant Dr. Salvador Rovira-Martinó ("Dr. Rovira").[1]  Plaintiffs requested damages caused by Dr. Rovira's failure to provide Moisés with adequate pre-natal care and for his mishandling of the infant's delivery.

On May 15, 2003, a jury found that Moisés suffered a lesion in his brachial plexus[2] due to traction during his delivery, which permanently impaired the use of his left arm and hand.  The jury awarded compensatory damages in the amount of two million dollars.  On June 11, 2003, the district court reduced the award to $1,790,000.  Dr. Rovira appealed the judgment and we affirmed. Muñiz v. Rovira, 373 F.3d 1 (1st Cir. 2004).  On May 10, 2004, Rovira filed a Motion to Set Aside Judgment, pursuant to Rule

---

[1]  Plaintiffs also filed suit against Hospital San Antonio, Inc. and the Puerto Rico Insurance Guaranty Association, but the parties settled on December 9, 2002 and April 11, 2003, respectively, and those claims are not relevant to this appeal.

[2]  The brachial plexus is "formed from a group of combining nerve roots that eventually divide again to form both motor and sensory peripheral nerves.  These peripheral nerves are responsible for the entire sensory and motor supply to the upper extremities (shoulders, arms, forearms, and hands) and some muscles of the back and chest."
http://neurosurgery.ucla.edu/Diagnoses/PeripheralNerve/Peripheral
NerveDis_1.html.

60(b)(3) of the Federal Rules of Civil Procedure. On September 9, 2004, the district court denied the motion, and Rovira now appeals, requesting that we grant the motion, or in the alternative, remand for an evidentiary hearing. After careful consideration, we affirm.

## I.

Sonia Crespo came into Dr. Rovira's care when she was thirty weeks pregnant. She was thirty-eight years old, diabetic, and pregnant with her sixth child. The combination of these factors made Sonia a high-risk patient, and the jury heard evidence from which it concluded that Dr. Rovira breached the applicable standard of care with respect to her pregnancy and Moisés's delivery. At trial, the jury heard evidence that Dr. Rovira failed to monitor and control Sonia's blood sugar levels during the later stages of her pregnancy, and did not monitor adequately (through ultrasound examinations and oxytocin challenge tests) Moisés's status during gestation. These omissions increased the risk that Moisés would be macrosomic, i.e., a large infant. Large infants must be delivered using specific methods (ideally by caesarean section) to avoid injury, and plaintiffs' expert testified that Dr. Rovira failed to take the necessary precautions to determine whether Moisés was macrosomic.

Moisés was in fact a macrosomic infant, and he experienced a traumatic delivery on April 29, 2000, during which he

sustained an injury to his brachial plexus.  The brachial plexus injury led Moisés to develop Erb's Palsy, a paralysis of the cervical spinal nerves corresponding to the brachial plexus.  As a result of the injury, Moisés's left shoulder, arm, and hand suffered atrophy and did not develop normally.

The jury heard expert testimony to the effect that Moisés has little range of motion and diminished reflexes on his left side, even after extensive treatment and two surgeries.  Sonia testified that Moisés cannot play, bathe, use the restroom, or attend school without extensive supervision and assistance. Plaintiffs' expert testified that even if he continues with physical therapy, Moisés's condition will affect him for the rest of his life.  Dr. Rovira, in turn, presented contrary testimony from an expert who predicted that Moisés would fully recover.

One year and five months after judgment was entered for plaintiffs, Dr. Rovira submitted to the district court video surveillance footage[3] of Moisés in support of his motion to set aside judgment on the basis that plaintiffs had misrepresented the extent of Moisés's injuries at trial.

The district court reviewed the surveillance footage and made the following observations: 1) On November 6, 2003, Moisés

---

[3]  Dr. Rovira had retained North American Investigation (NAI), a private investigative agency, to conduct the surveillance in an effort to determine the extent of impairment to the mobility of Moisés's left arm.

appears to be picking something up from the floor with his right hand while protecting his left arm. The left arm appears stiff and shows no signs of ordinary mobility; 2) On the same date, Moisés appears to be trying to lower the hood of his jacket without using his left arm; 3) On January 6, 2004, Moisés appears, holding and "protecting" his left arm; 4) On January 7, 2004, Moisés appears, carrying a bag of indeterminate weight on his shoulders, but not using his left arm; 5) On March 3, 2004, Moisés was observed walking and "showing a distinct and clear[ly] stiff left arm"; and 6) On April 28, 2004, Moisés appears to have had full movement of his right arm, but his left arm was stiff as he waited for the bus to go to school.

## II.

We review denial of a Motion to Set Aside Judgment under Rule 60(b) of the Federal Rules of Civil Procedure for abuse of discretion. Karak v. Bursaw Oil Corp., 288 F.3d 15, 19 (1st Cir. 2002). Under 60(b)(3), "the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for . . . fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." Fed. R. Civ. P. 60(b)(3). A successful rule 60(b)(3) motion has two elements: "First, the movant must demonstrate misconduct -- such as fraud or misrepresentation -- by clear and convincing evidence. Second, the movant must show that the

misconduct foreclosed full and fair preparation or presentation of [his] case." Karak, 288 F.3d at 20-21 (citation and internal quotation marks omitted).

Dr. Rovira argues that he has satisfied both prongs under Karak, and that the district court abused its discretion by denying his motion to set aside judgment. As to the first prong, he claims that plaintiffs misrepresented Moisés's injury and the extent of his impairment. Because we find that Dr. Rovira has not met his burden under the first prong, we do not consider the merits of his argument under the second.

In support of his allegation of misrepresentation, Dr. Rovira presents an alternative interpretation of the events depicted in the surveillance video. He disagrees with the court's analysis of the video, essentially arguing that Moisés's failure to use his left arm or hand in the activities depicted "in no[] way evinces the child having trouble using his left arm" because "he could be right-handed." Based solely upon this flimsy argument, Dr. Rovira concludes that the video actually depicts Moisés with a functional arm, and argues therefore that he has satisfied the first Karak prong. We find Dr. Rovira's video evidence to be neither clear nor convincing.

Under Rule 52 of the Federal Rules of Civil Procedure, "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous." We are bound by

this deferential standard of review, clarified by the Supreme Court in Anderson v. City of Bessemer City, N.C., 470 U.S. 564 (1985). In that case the Court held that,

> [i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. This is so even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts.

Id. at 573-74 (citations and internal quotation marks omitted). The Court could scarcely have been more clear on this point: we may not exercise de novo review over the district court's account of the video evidence in this case. Under the clear error standard, Dr. Rovira must convince us that there was only one permissible interpretation of the surveillance footage, and that the district court's interpretation was clearly incorrect. Dr. Rovira has not met this burden. Because we find that Dr. Rovira has not satisfied the first prong of Karak, we need not continue to consider the second.

Dr. Rovira requests, in the alternative, that we remand for an evidentiary hearing to ascertain the gravity of Moisés's injuries. Dr. Rovira does not develop any argument in support of

this request and we consider it waived.  <u>Am. Cyanamid Co.</u> v. <u>Capuano</u>, 381 F.3d 6, 18 (1st Cir. 2004).

We award standard costs to the appellees.  The appellees' request for attorneys' fees, made in the closing sentence of appellees' brief, must be made by separate motion, 1st Cir. Loc. R. 39(b), and we note that (absent statute) such motions are granted only in egregious circumstances.

### III.

For the foregoing reasons, we affirm.

**<u>Affirmed</u>**.