# United States Court of Appeals
## For the First Circuit

Nos. 08-2221, 08-2222

BRIAN J. KENNEDY; MICHELLE KENNEDY, individually and as mother
and next friend of B.D.K.; M.K.; D.K.,

Plaintiffs, Appellees/Cross-Appellants,

v.

TOWN OF BILLERICA; DANIEL C. ROSA, individually and as Chief of
the Billerica Police Department; MARK TSOUKALAS; RICHARD NESTOR;
SCOTT PARKER,

Defendants, Appellants/Cross-Appellees,

THOMAS CONNERS; FRANK A. MACKENZIE; RICHARD RHONSTOCK; MARTIN E.
CONWAY; ANDREW DEVITO; RICHARD HOWE; STEVEN ELMORE; MICHAEL A.
CASEY; WILLIAM MACDONALD; ALAN MUNN,

Defendants, Appellees,

JOHN BARRETTO, individually and as former Chief of the Billerica
Police Department, et al.,

Defendants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin and Lipez, Circuit Judges.

Leonard H. Kesten with whom Deidre Brennan Regan, Jeremy I.
Silverfine, and Brody, Hardoon, Perkins & Kesten, LLP were on brief

for the appellants/cross-appellees and appellees.

Andrew M. Fischer with whom Jason & Fischer, Frederick V. Gilgun, Jr., and Nicholson, Sreter & Gilgun, P.C. were on brief for the appellees/cross-appellants.

———————————————

July 13, 2010

———————————————

**LYNCH**, <u>**Chief Judge**</u>.  We affirm in part and reverse in part in this contentious civil rights case brought by a family of plaintiffs, the Kennedys, against the Town of Billerica, Massachusetts, and numerous individual police officers.  Before us are cross-appeals from jury verdicts and court rulings in the two trials in this bifurcated case.

Specifically, we hold that error in instructing the jury in the first trial on the state law crime of assault and battery on a police officer requires that there be a new trial on the only successful federal civil rights claim against a police officer in that trial.  The error undercut the basis for a defendant police officer's defense to a federal claim of false arrest for that crime.  The federal civil rights award against the Town and the award of attorney's fees under 42 U.S.C. § 1988 must, as well, be vacated.

As to the state law verdicts in the first trial against two individual police officers based on intentional infliction of emotional distress (IIED), we vacate and direct entry of judgment for defendants.  A minor's fear of going to court and a fear of the police, nightmares, and the loss of sleep, after arrest or after the filing of an application for a complaint against a minor, do not meet the severity of harm requirements under state law to find liability on IIED claims.  We also vacate the state law verdict against the Town, which rested on a theory not recognized under

-3-

Massachusetts law, that the Town may be liable for supervisory negligence even in the absence of cognizable underlying torts attributable to individual municipal employees or the Town. We order entry of judgment for the Town on this claim. We further reject plaintiffs' cross-appealed claims from the first trial, which were waived and also lack merit.

The verdict for plaintiffs in the second trial solely involved state law claims against two individual officers. We vacate and enter judgment for defendants on a state intentional infliction of emotional distress claim against an individual officer, because there was no evidence at trial supporting a finding that the officer intended to inflict emotional distress or that his conduct caused the emotional harms asserted by one of the minor plaintiffs. The verdict for plaintiffs against the other individual officer on an assault charge stands; the evidence presented on this claim was not so insufficient that no reasonable jury could have found for plaintiffs. We also affirm the district court's grant to defendants of judgment as a matter of law on plaintiffs' cross-appealed claims against the two officers.

## I. Background

In 2004, plaintiffs, Michelle and Brian Kennedy, Sr., and their three children, Brian Jr., Mitchell, and Dylan, all minors, brought suit under 42 U.S.C. § 1983 and state law against the Town of Billerica, Massachusetts, and more than two dozen individual

police officers in their official and personal capacities. Plaintiffs claimed that for thirteen years and in approximately sixty-five different incidents, from 1991 through the filing of their suit in 2004, the Billerica police conspired to and did deprive family members of their constitutionally protected civil rights and committed state law torts in order to drive the Kennedys out of town.

In light of the number and complexity of these claims, the district court bifurcated the case into two trials held in April and October 2007. The Kennedys introduced numerous witnesses and detailed dozens of events to try to show that defendants were involved in a department-wide campaign to harass them and violate their civil rights. They say the harassment began when Michelle Kennedy allegedly spurned defendant Officer Frank MacKenzie's advances in 1991.

Defendants denied all allegations and contested plaintiffs' account of the events, countering that the Billerica Police, like the police in nearby Tewksbury, investigated members of the Kennedy family because of their suspected involvement in drug crimes during this period. In both trials, juries rejected nearly all of the Kennedys' federal and state claims, including the Kennedys' central civil rights conspiracy claim in the first trial.

The first trial concerned the Kennedys' claims against the Town and seven named police officers: Chief Daniel Rosa and

Officers Frank MacKenzie, Steven Elmore, Michael Casey, Thomas Conners, Martin Conway, and Mark Tsoukalas.[1]  The lone federal claim on which the jury found against the individual defendants and awarded damages was Mitchell Kennedy's § 1983 false arrest claim against Officer Tsoukalas, a claim arising from an incident in 2004, when Mitchell was fourteen years old.  On the state IIED claims, the jury found for Mitchell on the same incident involving Officer Tsoukalas, and awarded Mitchell $15,000 in total damages for the two claims.[2]  The jury also found for Brian Jr. on a claim against Chief Rosa arising from a 1997 incident that occurred when Brian Jr. was nine years old, awarding $10,000 in damages.

As to the Town, there were two verdicts for plaintiffs, one each under federal and state law.  The jury found the Town liable under Monell v. Department of Social Services, 436 U.S. 658

---

[1]  The district court dismissed a number of plaintiffs' claims against defendants in the first trial on summary judgment, ruling that these claims were either outside the November 5, 2001 statute of limitations or supported by insufficient evidence to state a claim.  Among those claims the court ruled as outside the statute of limitations were plaintiffs' loss of consortium claims, including those made by the Kennedy children.  See Kennedy v. Town of Billerica (Kennedy I), 502 F. Supp. 2d 150, 160 (D. Mass. 2007).
The court also granted defendants' motion for a directed verdict following the close of evidence on all claims against Officer Conway, virtually all claims against Officer Casey, and almost all claims Michelle, Brian Sr., and Mitchell made arising from a November 9, 2001 incident (the "Masone incident").

[2]  The jury also found for Dylan on one IIED claim but awarded no damages; the district court granted defendants judgment on this claim.  See Kennedy v. Town of Billerica (Kennedy IV), No. 04-cv-12357, slip op. at 2 (D. Mass. Dec. 10, 2007).

(1978), only for Mitchell's § 1983 false arrest claim, on the ground that the Town's failure to properly supervise or discipline Officer Tsoukalas amounted to deliberate indifference to Mitchell's civil rights. The jury further found against the Town, and for Michelle, Brian Jr., Dylan, and Mitchell Kennedy, on a state law supervisory negligence claim, on the theory that the Town's practices were responsible for free-standing harms independent of identifiable torts committed by individual officers. Plaintiffs obtained nearly $380,000 in total damages at the first trial, mostly from the latter claim against the Town.[3] See Kennedy v. Town of Billerica (Kennedy IV), No. 04-cv-12357, slip op. at 1-4 (D. Mass. Dec. 10, 2007) (judgment on damages); Kennedy v. Town of Billerica (Kennedy III), No. 04-cv-12357, slip op. at 1-3, 7-10 (D. Mass. Aug. 21, 2007) (ruling on defendants' post-verdict motion for judgment as a matter of law in the first trial).

The second trial concerned the Kennedys' federal constitutional and state law tort claims against six other individual officers: Officers Alan Munn, Richard Howe, Richard Rhonstock, Andrew Devito, Richard Nestor, and Scott Parker.[4] Only

---

[3] On May 10, 2007, defendants filed a post-verdict motion for judgment as a matter of law or a new trial, and on August 21, 2007, the district court rejected all of defendants' arguments on the merits. See Kennedy III, No. 04-cv-12357, slip op. at 1-7 (Aug. 21, 2007). Plaintiffs did not file any post-verdict motions for reconsideration of any issues from the first trial, including the claims they now assert are a basis for a new trial.

[4] Plaintiffs initially proceeded against an additional fourteen officers in the second trial but later agreed to dismissal

-7-

claims against Officers Nestor and Parker, involving two discrete incidents in 1993 and 2002 respectively, went to the jury. The jury found for Brian Jr. on an IIED claim against Officer Nestor arising from the emotional trauma Brian Jr. said he suffered when his mother was arrested in front of him in 1993, when Brian Jr. was five years old, and awarded $2,500 in compensatory damages. The jury also found that in 2002, Officer Parker engaged in conscience-shocking conduct against Michelle Kennedy, assaulted her, and intentionally inflicted emotional distress on her, for which the jury awarded compensatory and punitive damages.

The district court granted defendants' post-verdict motion for judgment as a matter of law on Michelle's federal claim of conscience-shocking conduct and state IIED claim against Officer Parker, but left the verdicts against Officer Parker on Michelle's assault claim and against Officer Nestor on Brian Jr.'s IIED claim intact. See Kennedy v. Town of Billerica (Kennedy V), No. 04-cv-12357, slip op. at 2-12 (D. Mass. Jul. 24, 2008) (ruling on defendants' motion for judgment as a matter of law on claims in the first and second trials). The district court also vacated the

---

with prejudice of all claims against these officers. See Kennedy v. Town of Billerica (Kennedy II), No. 04-cv-12357, slip op. at 1 & n.1 (D. Mass. Aug. 15, 2007) (order granting in part and denying in part defendants' motion for summary judgment). The district court also granted summary judgment to defendants Officers Howe, Munn, Rhonstock, and Devito on all claims, and on certain claims against Officers Parker and Nestor. See id. at 1-15. Plaintiffs do not appeal any of these claims.

punitive damages award against Officer Parker, id. at 16, and Officer Parker was ultimately deemed liable for $2,000 in compensatory damages only.

## II. Issues Arising from the First Trial

The first trial, against the Town and seven individual officers, lasted seventeen days and involved testimony from nearly fifty witnesses. Though most of the Kennedys' claims had a three-year (November 5, 2001) statute of limitations, the district court allowed testimony about incidents stretching back to 1991 to provide context for the alleged civil rights conspiracy. It also allowed certain pre-2001 claims involving the Kennedy children, since the statute of limitations was tolled on some of those claims while they were minors.

The district judge described the trial as "an intense, nasty, awful case" and "the least civil trial I have presided over . . . within the last five years, maybe the last ten" due to incessant "uncivil and unprofessional" and even "unethical[]" behavior by both parties' counsel. The record fully supports this assessment. We commend the district court's handling of this extremely difficult case.

Eventually, twenty federal and state law claims against the Town, Chief Rosa, and Officers MacKenzie, Elmore, Conners, and Tsoukalas went to the jury, which rejected most, but not all, of plaintiffs' claims. Defendants now appeal the denial of their

motion for judgment as a matter of law, or in the alternative for a new trial, on all claims on which the jury found for plaintiffs. They also claim prejudicial errors. Because we grant defendants a new trial on some claims and judgment as a matter of law on all others, we need not reach those issues. We also reject all the claims raised on plaintiffs' cross-appeal.

We review the district court's denial of a post-verdict motion for judgment as a matter of law under Rule 50 de novo, viewing the evidence in the light most favorable to the verdict. See Jennings v. Jones, 587 F.3d 430, 438 (1st Cir. 2009); Visible Sys. Corp. v. Unisys Corp., 551 F.3d 65, 71 (1st Cir. 2008). We reverse the district court's denial of such motions if "the jury 'would not have a legally sufficient evidentiary basis' for its verdict." Jennings, 587 F.3d at 436 (quoting Fed. R. Civ. P. 50(a)). We review the denial of a motion for a new trial for abuse of discretion. See id. at 436-37. "Any error of law, if prejudicial, is a good ground for a new trial," among other grounds. 11 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2805, at 55 (2d ed. 1995). We describe the facts, framed in light of the applicable standard of review, as relevant.

A.        Federal and State Law Liability of Officer Tsoukalas

Mitchell Kennedy's false arrest and IIED claims against Officer Tsoukalas arose from a contested incident after dark on the

evening of February 20, 2004, when Mitchell was fourteen years old. That night, Officer Tsoukalas, in uniform, and another officer went to the trailer park where the Kennedys lived to respond to police reports that children were running across the top of a vacant trailer. The officers looked for signs of break-ins or vandalism but saw none, and told the children they initially encountered that they were free to leave.

Mitchell alleged at trial that at this point, Officer Tsoukalas stopped him on the Kennedys' property, shined a flashlight in his face, scratched his face when putting the flashlight down, and then arrested him without probable cause and threw him into a police car. Officer Tsoukalas pressed charges for assault and battery of a police officer against Mitchell. A jury acquitted Mitchell on these charges. A friend of the Kennedy family who said he saw the incident thirty feet away testified that he saw Officer Tsoukalas shine a flashlight in Mitchell's face, "belly-bump" him, and arrest him, and that Mitchell never touched Officer Tsoukalas.

Mitchell testified that he was "scared" of Officer Tsoukalas when he was arrested in front of his home. His mother was not home at the time but his older brother came by and spoke to the officer. Mitchell also testified he was "wicked scared" when he was photographed at the police station after his arrest and started crying; the police then called his mother and took him

home. He was at the police station for half an hour or so. He testified that he was "nervous" when he went to court to face charges and "really scared" when the jury came out because he "didn't know what was going to happen."[5] He also testified that as a result of this incident and other run-ins he had with the police (including when he was videotaping the police and later incidents in which he was questioned by the police), he suffered nightmares about being taken away from his family and was afraid whenever he heard police sirens. This was the only evidence plaintiffs introduced regarding the emotional harms Mitchell suffered from the February 20, 2004 arrest.

Officer Tsoukalas testified that, after he completed his initial investigation of the incident, he "saw another kid come walking around the corner from one of the trailers," shined a flashlight to illuminate him because it was dark, and asked the child to come toward him, again illuminating him to identify who it was. At this point, Tsoukalas identified the child as Mitchell Kennedy. Mitchell approached, swore at Officer Tsoukalas and told him to get the flashlight out of his face, and shoved Officer Tsoukalas, thus providing Officer Tsoukalas with probable cause to

---

[5] Mitchell also testified on cross-examination that he had been to court in an earlier case in which he had been criminally charged, but not arrested, and then acquitted of beating a car windshield. Plaintiffs claimed that this incident was malicious prosecution, but the district court directed a verdict for defendants on this claim. For the reasons we discuss below, there was no error in this ruling.

-12-

arrest Mitchell for assault and battery of a police officer. Officer Tsoukalas denied scratching or otherwise hitting Mitchell.

Pertinent to the issue of whether Officer Tsoukalas had probable cause to arrest Mitchell for shoving a police officer, defendants requested an instruction on the elements of the crime of assault and battery on a police officer. The district court declined the request and said the jury could be instructed if it asked. After it was charged, the jury then returned with a question: "Does light contact initiated, whether intentional or not, by a suspect on an officer constitute probable cause for arrest? For example, if a baseball player so much as touches an umpire, is it grounds for expulsion?"

The court then instructed the jury that under Massachusetts law, the elements of assault and battery on a police officer included "two types of batteries": either "a touching by an individual of the person of another with such violence that harm is likely to result, regardless of whether the person so touched consented thereto," or "a touching, which is not physically harmful, but offensive as an affront to the police officer's personal integrity," requiring "proof of nonconsent by the police officer." The latter type of battery, the court elaborated, required proof "that [Mitchell] touched the police officer," that "the police officer did not consent to the touching," and "that the conduct constituting the act of touching was an intended act and

not an accidental one." The difficulty came in the court's next statement, that Officer Tsoukalas "also has to establish that [Mitchell's] act which resulted in the touching was both intentional and wanton and reckless, that is to say, more than negligent, and that it caused bodily injury to the victim; in other words, the police officer [Tsoukalas]."

Defense counsel objected to the last part of this instruction, focusing on the argument that the "bodily injury requirement" was not necessary to show offensive battery.[6] The district court said it would consider the objection over the weekend, review cases, "and, if necessary, change [the instruction] on Monday." Later in the discussion, the district court stated that although "the last paragraph" of the battery instruction was not wrong, it was "not well crafted" and "just a little confusing," and the court invited both parties "to try your hand at doing something cleaner." Defense counsel reiterated his objection.

The following Monday, defense counsel submitted a proposed supplemental jury charge to clarify that the state crime of offensive battery did not require proof of bodily injury. The district court rejected the instruction and decided that the original instruction had been clear enough. Defense counsel again objected. The jury ultimately found for Mitchell on the § 1983 false arrest claim, which required finding that Officer Tsoukalas

---

[6] We accordingly do not examine the "wanton and reckless" portion of the instruction.

had arrested Mitchell for assault and battery on a police officer without probable cause. The jury also found for Mitchell on the state law IIED claim derived from that arrest.

1.        Mitchell's § 1983 False Arrest Claim

Defendants say the assault and battery jury instruction created prejudicial error because it wrongly conveyed to the jury that offensive battery--the type of battery defendants alleged Mitchell committed on Officer Tsoukalas--required proof that Officer Tsoukalas suffered a bodily injury. Officer Tsoukalas never claimed bodily injury resulted when Mitchell shoved him; defendants say the instruction precluded the jury from finding that Mitchell committed battery on a police officer, and therefore that Officer Tsoukalas had probable cause to arrest Mitchell.[7] In effect, defendants argue, the court instructed a verdict in Mitchell's favor.

Where, as here, defendants have a preserved objection that the jury instructions were so inaccurate that they are entitled to a new trial, our review of the instructions is de novo.

---

[7]    Plaintiffs claim defendants' objections to the instruction were waived because defendants failed to offer a jury instruction before deliberations began. But the claimed error here is not that the district court failed to provide the jury with an essential instruction; it is that when the jury asked for further instructions, the district court provided an erroneous instruction on the law. Defense counsel timely objected to that instruction. See 9C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2553, at 72-73 & n.39 (3d ed. 2008). Counsel also timely provided a supplemental instruction at the court's invitation; the district court rejected it.

Goodman v. Bowdoin Coll., 380 F.3d 33, 47 (1st Cir. 2004). We look to the challenged instructions in relation to the charge as a whole, "asking whether the charge in its entirety--and in the context of the evidence--presented the relevant issues to the jury fairly and adequately." Id. Even if the instructions were erroneous, we find that the district court abused its discretion in denying a motion for new trial on this basis only if "the preserved error, based on a review of the entire record, can fairly be said to have prejudiced the objecting party." Id. (quoting Levinsky's, Inc. v. Wal-Mart Stores, Inc., 127 F.3d 122, 135 (1st Cir. 1997)) (internal quotation marks omitted). That threshold is satisfied here, and we hold that defendants are entitled to a new trial on Mitchell's § 1983 false arrest claim.

The instructions at issue prevented the jury from fairly and adequately understanding the elements of offensive battery essential to Officer Tsoukalas's defense. Massachusetts law, as defendants point out, does not require proof of physical injury as an element of offensive battery. See Commonwealth v. Hartnett, 892 N.E.2d 805, 814 & n.4 (Mass. App. Ct. 2008); see also Commonwealth v. Cohen, 771 N.E.2d 176, 177-78 (Mass. App. Ct. 2002). The sample Massachusetts jury instruction from which the district court instructed the jury correctly identified the three elements of offensive battery in the initial portions of its instructions. The final part of the court's instructions to the jury nonetheless

conveyed a contradictory and confusing statement of the law to the jury and effectively identified bodily injury as a required element of offensive battery.

This instruction materially prejudiced defendants on Mitchell's false arrest claim against Officer Tsoukalas, whose primary defense was that he had probable cause to arrest Mitchell because Mitchell had committed an offensive battery against him. The jury clearly considered this issue essential to its deliberations and indicated that neither the evidence nor other instructions had given it a clear sense of the issue, prompting it to specifically ask for further instructions. Cf. Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries, 272 F.3d 441, 452 (7th Cir. 2001). The instructions given prevented the jury from fairly evaluating Officer Tsoukalas's defense and arguably precluded a finding for Officer Tsoukalas entirely. Defendants are entitled to a new trial on this claim.

2.      Mitchell's State Law IIED Claim

Defendants argue, and we agree, that they were also entitled to judgment on Mitchell's IIED claim against Officer Tsoukalas.[8]

---

[8]     Our conclusion on this state law claim is independent of our holding that Officer Tsoukalas is entitled to a new trial on Mitchell's § 1983 false arrest claim. Even assuming arguendo that a properly instructed jury could find that Officer Tsoukalas arrested Mitchell without probable cause, and even viewing the evidence in Mitchell's favor, Mitchell's asserted emotional harms do not make out an IIED claim.

Under Massachusetts law, a plaintiff must show he suffered "severe" emotional distress as one of the four elements of an IIED claim.[9]  This means the kind of distress "that no reasonable man could be expected to endure," Agis v. Howard Johnson Co., 355 N.E.2d 315, 319 (Mass. 1976) (quoting Restatement (Second) of Torts § 46 cmt. j (1965)) (internal quotation marks omitted), as opposed to mere "emotional responses including anger, sadness, anxiety, and distress," which, though "blameworthy," are "often not legally compensable." Quinn v. Walsh, 732 N.E.2d 330, 338 (Mass. App. Ct. 2000).

We do not downplay the possible emotional effect of an allegedly wrongful arrest on a fourteen-year-old.  However, though Massachusetts recognizes that children and other particularly susceptible persons are likely to be more vulnerable to emotional harm, see Boyle v. Wenk, 392 N.E.2d 1053, 1056 (Mass. 1979), the generalized harms Mitchell alleged were too transient, too vague, and insufficiently severe to satisfy this standard.

The strength of a standard is always a matter of degree, but the Massachusetts cases are demanding.  See Bailey v. Shriberg,

---

[9]    The other elements are "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct ...; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community," and "(3) that the actions of the defendant were the cause of the plaintiff's distress."  Howell v. Enter. Publ'g Co., LLC, 920 N.E.2d 1, 28 (Mass. 2010) (quoting Agis v. Howard Johnson Co., 355 N.E.2d 315, 318-19 (Mass. 1976)) (internal quotation marks omitted).

-18-

576 N.E.2d 1377, 1379 (Mass. App. Ct. 1991) (finding no "severe" emotional distress, even for susceptible plaintiffs, where the allegations merely involved being upset as a result of defendants' conduct); cf. Homesavers Council of Greenfield Gardens, Inc. v. Sanchez, 874 N.E.2d 497, 504 (Mass. App. Ct. 2007) (finding "severe" emotional distress where the plaintiff presented evidence of severe depression, suicidal thoughts, and loss of sleep for more than a month). The harms Mitchell alleged in his testimony--that he feared Officer Tsoukalas at the time of arrest and feared going to court, and that this arrest, as well as other incidents, had made him generally "nervous," afraid of police sirens, and had sometimes given him "nightmares" that produced sweating and a racing pulse--are little different from the harms Massachusetts courts have deemed insufficiently severe.

We do not reach the question of whether Mitchell could have made out an IIED claim on different facts, for instance if he had offered detailed testimony that established that he had suffered serious emotional injury or anguish, exhibited psychiatric or physical symptoms of severity, or that Mitchell's life was otherwise materially disrupted by his reaction to this arrest. No such evidence was offered in this case. On the facts developed at trial--and we do not go beyond them--plaintiffs have not made the requisite showing that Mitchell suffered "severe" emotional distress.

B.        State Law Liability of Chief Rosa

The sole ground on which the jury found against Chief Rosa was on a state law IIED claim by Brian Jr.  The factual predicate for this claim, viewed in the light most favorable to the verdict, was that in 1997, when Brian Jr. was nine years old, Chief Rosa deliberately filed a baseless complaint application against him for malicious destruction of property, using a report from another officer stating that Brian Jr. had thrown rocks at his neighbor's trailer.  As a result of the complaint application, Brian Jr. said that he was "scared" and "didn't sleep much" when he learned he would have to appear in court because he had "never been in court before."

We agree with defendants that Chief Rosa was entitled to judgment on this IIED claim.  Even when viewing the evidence in plaintiffs' favor, Brian Jr., like Mitchell, clearly did not allege emotional harm of a requisite severity to make out an IIED claim, for the reasons discussed above with respect to Mitchell's claim.[10] Brian Jr.'s alleged loss of sleep for an unspecified period before his court appearance, and his generalized fear of going to court, do not rise to the level of emotional suffering that "no reasonable man should be expected to endure," Agis, 355 N.E.2d at 319 (quoting Restatement (Second) of Torts § 46 cmt. j (1965)) (internal

_____

[10]     We bypass whether Chief Rosa's alleged conduct was "extreme and outrageous" and "beyond all possible bounds of decency," Howell, 920 N.E.2d at 28, another required element of an IIED claim that defendants say was not satisfied here.

-20-

quotation marks omitted), even considering Brian Jr.'s susceptible emotional state as a nine-year-old.

C.        Federal and State Law Liability of the Town of Billerica

1.        Monell Liability on Mitchell's § 1983 False Arrest Claim against Officer Tsoukalas

Mitchell's false arrest claim against Officer Tsoukalas was the only constitutional violation to which the jury attributed the Town's negligent failure to train and supervise under Monell. Because we have granted a new trial on the false arrest claim, we also vacate the jury's verdict on the Monell claim and remand for a new trial with the false arrest claim.

Monell can impose municipal liability only for underlying, identifiable constitutional violations attributable to official municipal policy; the municipality's failure to train or supervise its police officers only becomes a basis for liability when "action pursuant to official municipal policy of some nature caused a constitutional tort." Monell, 436 U.S. at 691 (emphasis added); see also City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."); McSherry v. City of Long Beach, 584 F.3d 1129, 1147 (9th Cir. 2009); Graves v. Thomas, 450 F.3d 1215, 1218 (10th Cir. 2006); Wilson v. Town of Mendon, 294 F.3d 1, 6-7 (1st Cir. 2002).  Other

-21-

than Mitchell's § 1983 false arrest claim, the district court either entered judgment for defendants or the jury rejected all other remaining constitutional torts that could have formed a basis for municipal liability. Plaintiffs did not allege, nor did the evidence suggest, any other possible underlying constitutional torts that the jury could have attributed to the municipality.

2.       The Town's State Law Liability for Supervisory Negligence Claims

We also hold that the defendants were entitled to judgment on the state law supervisory negligence claim against the Town, and we vacate the award for plaintiffs.

The jury found that the Town was liable under state law for supervisory negligence because the Town "commit[ted] negligence in disciplining or supervising its police officers which proximately caused harm" to Michelle, Brian Jr., Mitchell, and Dylan Kennedy. Plaintiffs were awarded more than $300,000 in total damages against the Town, beyond the Town's joint and several liability for individual torts the jury found were committed by individual officers. The district court held that this claim could be made under Mass. Gen. Laws ch. 258, § 2, and that it could be sustained based on general evidence that the Billerica police engaged in a pattern of harassment over the course of a decade, see Kennedy III, slip op. at 7, not on the basis of individual torts committed by individual officers.

Defendants start by objecting that they were unfairly caught by surprise by the district court's ruling. The plaintiffs never framed the state negligent supervision claim as a free-standing claim against the Town in the absence of a finding that particular torts were committed by Town employees and these were caused by the Town's negligent supervision, much less that liability could be predicated on a pattern of events including events outside the three-year statute of limitations. They protest that this theory of liability was first articulated by the district court in its order denying defendants judgment as a matter of law.[11]

We pretermit analysis of that question in favor of addressing defendants' more substantive objections. Defendants argue that the verdict against the Town must be vacated, and judgment granted to defendants, in the absence of a finding that individual officers committed any specific torts which in turn were traceable to the Town's supervisory negligence. They say that under Massachusetts law, the Town is only liable for supervisory negligence for failing to prevent torts committed by individual employees, not for unattributed, general practices that do not rise

---

[11] The district court concluded that the Town could be held liable for free-standing incidents only in a post-verdict motion denying defendants judgment as a matter of law, and even then it recognized that "neither side thoroughly discussed this claim during closing arguments." See Kennedy III, slip op. at 4-7. Articulation of this issue in a post-verdict ruling is too late for defendants to have had an adequate chance to counter the claim at trial.

to the level of tortious conduct. Defendants have preserved this issue for appeal.

The district court did not address this argument in denying defendants judgment as a matter of law.[12] Defendants are correct that thus far, Massachusetts cases have only allowed supervisory negligence claims against municipalities where the municipality knew or should have known about an underlying, identifiable tort which was committed by named or unnamed public employees. See Mass. Gen. Laws ch. 258, § 2, 10(c); Dobos v. Driscoll, 537 N.E.2d 558, 569 (Mass. 1989) (explaining that municipalities can be sued under the MTCA for supervisory negligence "where the supervisory officials allegedly had, or should have had, knowledge of a public employee's assaultive behavior"); Doe v. Blandford, 525 N.E.2d 403, 408 (Mass. 1988) (same). No Massachusetts case has been cited to us that has ever recognized a supervisory negligence claim against municipalities for generalized, free-standing, and unspecified wrongs when no individual employee or group of employees committed an underlying tort.

---

[12] It merely held that defendants were not entitled to judgment because the Massachusetts Tort Claims Act (MTCA) generally recognizes the tort of supervisory negligence and that the evidence that various unspecified Billerica officers harassed plaintiffs as a general practice over the course of a decade was sufficient to support the claim. See Kennedy III, slip op. at 3-7.

We decline to extend the doctrine of municipal supervisory liability that far, especially in light of the policy and economic concerns for municipalities. A federal court, interpreting state law, is not the appropriate place to adopt a novel and expansive view of municipal liability under state law. See Warren v. United Parcel Serv., Inc., 518 F.3d 93, 100-01 (1st Cir. 2008). Plaintiffs failed at trial and on appeal to identify any cognizable tort committed against Michelle, Brian Jr., Mitchell, or Dylan, outside of the specific torts that either were rejected by the jury or were directed out by the district court, which the jury could have connected to the Town's negligent supervision. Plaintiffs cannot collect on this claim by simply asserting that the Town created unspecified harms.

Second, there is reason to doubt the SJC would adopt such a view. Under 28 U.S.C. § 2680(h) of the Federal Tort Claims Act, which Massachusetts considers a "nearly identical provision" to § 10(c) of the Massachusetts Tort Claims Act, Doe, 525 N.E.2d at 407, the United States can be held liable for certain identifiable torts committed by its agents. But the FTCA has never been interpreted to impose free-standing liability on the federal government for unspecified and unattributed conduct that do not fall under recognized categories of torts. See 28 U.S.C. § 2680(h); see also Santoni v. Potter, 369 F.3d 594, 603 (1st Cir. 2004). This suggests a further reason not to extend the doctrine.

We vacate the jury's award of damages to Michelle, Brian Jr., Dylan, and Mitchell Kennedy on this basis and hold that the Town was entitled to judgment on this claim.[13]

D.        Plaintiffs' Cross-Appeal

Plaintiffs also cross-appeal issues from the first trial. They argue that they are entitled to a new trial because the district court erred in (1) granting summary judgment to defendants on the Kennedy children's loss of consortium claims; (2) entering judgment for the defendants on plaintiffs' false arrest, malicious prosecution, unlawful imprisonment, and related claims arising from the so-called November 9, 2001 "Masone incident"; (3) admitting "bad character" hearsay evidence as to the Kennedy parents' involvement in drugs; (4) bifurcating the two trials into an initial trial against the Town and seven individual officers, and

---

[13] Our conclusion is further supported by the fact that, as defendants argue, plaintiffs never framed negligent supervision as a free-standing claim that could confer independent liability on the Town based on events that occurred well outside the three-year statute of limitations. In their presentment letter, their complaint, their arguments and submissions at trial, and in their proposed jury instructions, plaintiffs never argued that the Town could be held liable for supervisory negligence in the absence of specified individual torts committed by named or unnamed individual officers. Indeed, plaintiffs suggested the opposite. Defense counsel's colloquy with the district court regarding jury instructions appeared to confirm defendants' position that the Town had to be linked to individual constitutional or state law torts to be liable on either Monell or supervisory negligence claims. And the jury instructions were ambiguous.

Moreover, plaintiffs did not point to any incidents within the three-year statute of limitations that were not attributable to individual defendants and could have provided a viable basis for supervisory liability.

-26-

a second trial against remaining individual officers; and (5) not submitting a federal constitutional substantive due process claim to the jury. They also claim that the district court erred in reducing the damages award to Mitchell and Brian Jr. on the negligent supervision claim against the Town and to Mitchell on the Monell claim.

We have reviewed all of these claims and reject them. Plaintiffs have waived most of these arguments by failing to timely make them before the district court. See States Res. Corp. v. The Architectural Team, Inc., 433 F.3d 73, 85 (1st Cir. 2005). They are in any event meritless for reasons we briefly discuss.

The district court properly granted summary judgment on the Kennedy children's loss of consortium claims because they are plainly barred by the November 5, 2001 statute of limitations, notwithstanding the rule preserving claims of minors. The underlying injuries that caused the Kennedy children to allegedly suffer a loss of consortium involved time-barred claims of injuries to the Kennedy parents. Under Massachusetts law, "loss-of-consortium claims that do not accrue until after the statute of limitations has run on the underlying injury may not be enforced." Lareau v. Page, 39 F.3d 384, 391 (1st Cir. 1994).

Likewise, the district court properly granted judgment for defendants on claims arising from the so-called "Masone incident," in which Brian Sr., Michelle, and Mitchell were

arrested, prosecuted, and eventually acquitted for their alleged involvement in breaking car windows and fighting with various acquaintances who showed up by the Kennedy's trailer in the middle of the night on November 5, 2001. The district court properly directed a verdict on the claims made by Michelle and Brian Sr., since a grand jury found there was probable cause to arrest them in connection with this incident, disposing of their false arrest, malicious prosecution, and other derivative claims. See Gonzalez Rucci v. I.N.S., 405 F.3d 45, 49 (1st Cir. 2005). Plaintiffs' attempts to impugn the grand jury testimony are not only belated and unpreserved but also insufficient to upset the district court's conclusion.

The district court also properly directed a verdict on Mitchell's malicious prosecution claims against all officers but Chief Rosa. All of plaintiffs' arguments on these claims were not made to the district court and cannot be raised now. Plaintiffs could not, in any event, have submitted Mitchell's claims against non-defendant officers in the first trial to the jury, as they now request, and there was insufficient evidence connecting the other defendant officers to the incident.

Plaintiffs' assertion that they are entitled to a new trial because the district court committed prejudicial error by admitting hearsay evidence is meritless. We review the specific evidentiary objections presented. On appeal, plaintiffs claim there

was error in the admission of a police chart and a related 1991 police report regarding a drug investigation, testimony about Michelle and Brian Sr.'s involvement in a drug ring, testimony about drug buys, questioning about a drug conviction, plaintiffs' drug treatment records, testimony regarding plaintiffs' eviction from their trailer park, and defense counsel's opening and closing arguments. The district court did not err in admitting this evidence.

Defendants introduced assorted evidence regarding the Kennedys' involvement in drug dealing to rebut plaintiffs' central theory, that the police were targeting the Kennedys for no reason, by showing that the Kennedys' involvement in drugs gave the police ample grounds to investigate them. Defendants were entitled to do so. Indeed, the district court explicitly warned plaintiffs' counsel that plaintiffs were "open[ing] the world" to testimony regarding the Kennedys' suspected involvement in drug dealing by suggesting that the police began investigating the Kennedys for drugs only in retaliation for Michelle spurning Officer MacKenzie's advances. Plaintiffs' counsel at that point agreed to the risk and even conceded that it was "fine" to allow in the 1991 police report that plaintiffs now challenge on appeal. The district court also reminded the jury that the 1991 report, like other documents regarding drug investigations of the Kennedys, was "hearsay from an informant," and explained that such documents were "relevant only

as to what was in the mind of the police when they were investigating the Kennedys in 1991." The court repeated this instruction before the jury went to deliberate. Plaintiffs fail to acknowledge these curative instructions and have not, in any event, established prejudice. For the same reasons, even if plaintiffs had timely objected to defense counsel's statements in opening and closing arguments about the Kennedy's involvement in drugs, these claims fail.

As for defense counsel's questions regarding Brian Sr.'s 1988 drug conviction, the district court repeatedly sustained plaintiffs' objections, and the conviction was never admitted. Plaintiffs have not shown that defense counsel's repeated references to this incident caused prejudice, not least in light of the district court's instructions. Moreover, both sides repeatedly flouted the court's various rulings; plaintiffs' request for a mistrial on this basis is misplaced.

Similarly, the district court restricted the scope of testimony regarding the plaintiffs' eviction but allowed limited testimony to rebut plaintiffs' central claim, that they were forced out of Billerica and evicted from the trailer park because of constant police harassment. Plaintiffs' objections to questions beyond the scope of this testimony were consistently sustained, and plaintiffs' assertions that the jury was nonetheless exposed to prejudicial hearsay misrepresents the record.

Plaintiffs' objections to the admission of Michelle Kennedy's drug treatment records are also meritless. Plaintiffs not only asked Michelle about her counseling at the Seven Hills treatment center and about her addiction to various pills but admitted her medical records into evidence themselves. At no point did plaintiffs object to the admission of records concerning methadone use. Plaintiffs also failed to object when defense counsel questioned Michelle Kennedy regarding her treatment for heroin and cocaine use.

We also reject plaintiffs' cross-appeal of the district court's bifurcation of their claims into the two trials. This claim is in any event waived, since plaintiffs failed to timely object to the bifurcation during the two trials. Plaintiffs inaccurately argue that they were unable to present the "full scope of harassment and misconduct" at both trials. The district court in fact gave plaintiffs great leeway, allowing them in both trials to introduce extensive evidence about incidents occurring well before the statute of limitations bar date, and to present, in the first trial, evidence of conduct by defendants who were involved only in the second trial. Plaintiffs' other, cursory objections were not preserved and also fail to show prejudice.

We further reject plaintiffs' argument that they should have been able to submit a federal constitutional "substantive due process" claim to the jury asserting that the Kennedys were singled

out for disparate treatment and deprived of their liberty. Plaintiffs have repeatedly waived this claim. To the extent this is a substantive due process claim, it is waived because plaintiffs specifically told the district court they did not want to submit such a claim to the jury. To the extent this may be characterized as an equal protection claim, it is equally waived and meritless. The district court properly found that plaintiffs never gave defendants fair notice of such a claim in any relevant pleadings, and plaintiffs did not timely object to that ruling.

Finally, the district court did not erroneously reduce damages awards to plaintiffs. Plaintiffs say that the court erred in reducing the Monell award to Mitchell because they say the jury could have held (and should have been instructed) that the Town was liable for cumulative constitutional violations even if no individual officer was found liable. Plaintiffs' objections to the jury instructions are waived. Even assuming dubitante that the jury could have considered uncharged, accumulated instances of harassment in addition to the specific constitutional violations plaintiffs asserted (all but one of which the jury rejected), plaintiffs never argued, nor is it apparent, that the uncharged harassment could have amounted to a constitutional violation. Their argument also incorrectly states the law; the Town may be liable even if individual officers are ultimately exonerated, for instance because the officers are granted qualified immunity or for

-32-

failure of proof, but plaintiffs must still show some underlying constitutional tort attributable to the Town.  See Wilson, 294 F.3d at 6-7.  And we have directed entry of judgment to defendants on the supervisory negligence claim against the Town, making plaintiffs' objections to the reduction of that award moot.

### III. Issues Arising from the Second Trial

The second trial lasted six days and involved testimony from eleven witnesses.  Only claims against Officers Nestor and Parker went to the jury.  See Kennedy II, slip op. at 14 (granting summary judgment on claims against all other defendants).  After the district court granted in part defendants' post-verdict motion for judgment as a matter of law, the only claims on which plaintiffs prevailed were Brian Jr.'s IIED claim against Officer Nestor for events in 1993 and Michelle's assault claim against Officer Parker for events in 2002.  See Kennedy V, slip op. at 16.

Defendants now argue that the district court erred in not granting them judgment on these claims as well.[14]  They also say the district court erred in denying their motion for a mistrial because of allegedly prejudicial comments admitted into evidence.  Plaintiffs cross-appeal the district court's grant of judgment to

---

[14]    Defendants' motion before the district court requested judgment as a matter of law or, in the alternative, a new trial, and the district court denied both remedies on these claims in its opinion.  See Kennedy V, slip op. at 1-2, 10.  On appeal, defendants only request judgment in their favor on these claims; they have waived their appeal of the district court's denial of a new trial.

defendants on Michelle's substantive due process and IIED claims and say the jury verdicts on those claims should not have been vacated.

We review the district court's grant or denial of judgment as a matter of law de novo, Visible Sys. Corp., 551 F.3d at 71, viewing the evidence in the light most favorable to the verdict-winner, and vacating the jury verdict only if it lacks a sufficient evidentiary basis, Jennings, 587 F.3d at 438. We review the district court's denial of a motion for a mistrial for manifest abuse of discretion. See United States v. DeCologero, 530 F.3d 36, 52 (1st Cir. 2008). We again describe the facts as necessary and in light of the relevant standards of review.

A.        State Law Liability of Officer Nestor

The jury returned a verdict for Brian Jr., and against Officer Nestor, on an IIED claim that arose from a 1993 incident in which Brian Jr. allegedly suffered emotional harms from watching his mother being arrested and taken by police in their trailer home when he was five years old.[15] Plaintiffs asserted that Officer Nestor was responsible for Brian Jr.'s emotional distress, even though Officer Nestor was not present at the arrest, because they claim he had no basis for filling out a criminal complaint against

---

[15]    We do not decide whether Brian Jr.'s asserted emotional harms of not being able to sleep alone and being afraid for a period of months that his mother would be taken away were "severe" given the emotional susceptibility of a five-year-old. Other required IIED elements are plainly absent.

Michelle after an earlier incident in which she allegedly confronted Nestor for driving dangerously close to the Kennedys' car. Officer Nestor testified that in that incident, Michelle swore and spat at him. He considered this an assault and filled out a complaint application, but he decided not to apply for a warrant. He further stated that the charges against Michelle were enhanced while he was away, without his knowledge. Even assuming arguendo that Officer Nestor had no basis for filing this complaint application, there was no evidence that he was involved in or intended for the charge to be enhanced to have Michelle arrested.

We hold that defendants were entitled to judgment on this claim. Even when viewing the record most favorably to plaintiffs, no evidence at trial established, and considerable evidence rebutted, two of the essential elements of an IIED claim: "that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct" and that "the actions of the defendant were the cause of the plaintiff's distress." Agis, 355 N.E.2d at 18-19.

Uncontroverted testimony from Officer Nestor and other witnesses confirmed that he explicitly and deliberately requested only a complaint application, which results in a mere summons, not an arrest. He was on vacation when the application was enhanced (either by another officer or the magistrate clerk at the local court) to request an arrest warrant, and he was still away when

-35-

Michelle was arrested.[16] Officer Nestor testified that on his return, he was "upset to learn" that the charge had been enhanced without consulting him. He cannot be held liable for the harms Brian Jr. alleged as a result of that arrest, which Officer Nestor did not seek and which was sought without his knowledge or input.

B.        State Law Liability of Officer Parker

The only verdict the district court left in place against Officer Parker was a state law assault claim brought by Michelle for events in 2002. See Kennedy V, slip op. at 11. Defendants say the district court erred by not granting them judgment as a matter of law on this claim because the evidence was insufficient to support the verdict. We disagree.

Viewing the evidence in the light most favorable to plaintiffs, the verdict-winners, we cannot find that "the evidence was so strongly and overwhelmingly inconsistent with the verdict that no reasonable jury could have returned it." See Crowe v. Bolduc, 334 F.3d 124, 134 (1st Cir. 2003). Assault, under Massachusetts tort law, requires that the defendant "act[ed] intending to cause a harmful or offensive contact" with plaintiff, "or an imminent apprehension of such a contact," and that plaintiff was "thereby put in such imminent apprehension." Restatement (Second) of Torts § 21(1) (1965); see also Conley v. Romeri, 806

---

[16] Plaintiffs assert on appeal that Officers Nestor and Conners lied about altering the complaint application and both intended to have Michelle arrested. No evidence at trial supports these assertions.

N.E.2d 933, 939 n.6 (Mass. App. Ct. 2004). "'Words do not make the actor liable for assault unless together with other acts or circumstances they put the other in reasonable apprehension of an imminent harmful or offensive contact with his person.'" Commonwealth v. Delgado, 326 N.E.2d 716, 719 n.3 (Mass. 1975) (quoting Restatement (Second) of Torts § 31 (1965)).

The assault claim here arose from a 2002 incident in which Michelle testified that Officer Parker "shoved [her] really hard" when she was walking to her car, "tr[ied] to get in" her car after she locked herself in, and was "kicking it and calling [her] really bad names" and continually swearing at her.[17] Dean Royston, a (now-former) police officer who appeared on the scene, testified that he saw Officer Parker standing at the driver's door of Michelle's car yelling and swearing, and that Michelle left her car and swore back at him in a "screaming match." Officer Parker denied shoving Michelle, kicking her car, or attempting to break into her car to get to her. Parker conceded that "unfortunately, I lost my cool and started giving it back to her, cursing at her,

[17] The incident began when Michelle, her husband Brian Sr., and two friends began loading skateboard ramps--which they said they had permission to take--in a wooded area behind the local Boys' Club. Officer Parker said he received a call reporting a suspected drug deal at the location, identified the skateboard ramps as those used in a police recreational league, and asked that the ramps be put back.

As Brian Sr. and the other friends left, Michelle was swearing at Officer Parker. The assault allegedly occurred when no one else was around. Michelle called then-Officer Dean Royston from her car during the alleged assault, and exited her car when Royston arrived. The incident ended when Royston told Michelle to leave.

swearing at her" after she "had gotten back in the car and locked the door" and that he cursed at her "through the open sunroof" of her car for several minutes.

The jury rejected Michelle's claims that Officer Parker used excessive force, had battered her, or had unreasonably detained her. It could nonetheless have found Officer Parker liable for assault on the basis of Michelle's testimony that Officer Parker repeatedly kicked her car while swearing at her and attempting to get inside her car.

Defendants' argument to the contrary rests on an overly narrow view of the state law tort of assault. Under Massachusetts tort law, a defendant need not "be able instantly to carry out the physical violence threatened by his conduct," Ginsberg v. Blacker, 852 N.E.2d 679, 684 n.8 (Mass. App. Ct. 2006); rather, "'[i]t is enough that one is so close to striking distance that he can reach [plaintiff] almost at once." Id. (quoting Restatement (Second) of Torts § 29 cmt. b (1965)). On this basis, Massachusetts has suggested--and other state courts have held--that "shouting angrily at a person and raising a hand (or shaking a fist) in that person's face" constitutes assault. Id. On these facts, Officer Parker's shouting and swearing, combined with his proximity to Michelle while he was kicking her car and allegedly trying to get into her car, qualifies as an assault.[18]

---

[18]    There may be relevant defenses or privileges available to police officers under other provisions of Massachusetts law, for

C.        Defendants' Motion for a Mistrial

Defendants cursorily appeal the district court's denial of their motion for a mistrial, arguing that the district court abused its discretion by admitting improper and prejudicial evidence. Specifically, defendants object to the admission of evidence regarding another officer's arrest of Michelle months after the 1993 incident involving Officer Nestor and "inflammatory suggestions" regarding a non-defendant witness, retired Deputy Chief Conners, who allegedly "gave the 'finger' to Brian Jr." in the courthouse after Conners's testimony at the second trial.

Neither of these incidents rise to the exceedingly high level of prejudice required for us to find a manifest abuse of discretion. See DeCologero, 530 F.3d at 52. The admission of evidence regarding another officer's arrests of Michelle later in 1993 was hardly prejudicial; indeed, the officer's testimony suggested that Officer Nestor had little to do with these later arrests and that the officer had probable cause to arrest Michelle. In any event, any prejudice would have only affected the jury verdict against Officer Nestor, which we already vacated.

The admission of evidence concerning Deputy Chief Conners's conduct at the federal courthouse was admitted as

_____

instance to use reasonable force to effect an arrest. Defendants, however, solely argued that Officer Parker could not be liable for the tort of assault because shouting and kicking a car generally do not rise to the level of assault. We reject that position in relation to the facts of this particular case, viewed in the light most favorable to the jury verdict.

relevant to Conners's credibility. Any prejudice from the admission of this testimony would again have been limited to the incident involving Officer Nestor, in which Conners had been involved. Neither side alleged that Deputy Chief Conners had anything to do with the 2002 incident involving Officer Parker, and Conners' testimony was limited to the 1993 incident. We therefore hold that there was also no prejudice in admitting this testimony.

D.        Plaintiffs' Cross-Appeal

We reject plaintiffs' cross-appeal of the district court's grant of judgment to defendants on Michelle's substantive due process and IIED claims against Officer Parker, arising out of this same 2002 incident. The district court was correct. Even taken in the light most favorable to the verdict, the evidence fell far short of showing conscience-shocking conduct, a sine qua non for the claim. Martinez v. Cui, No. 09-1471, 2010 WL 2404390, at *8-9 (1st Cir. June 17, 2010).

The jury rejected plaintiffs' claims that Officer Parker used excessive force against Michelle or unreasonably detained her; the only remaining bases for finding Officer Parker engaged in conscience-shocking conduct were Michelle's allegations that Officer Parker kicked her car repeatedly and swore and screamed at her for several minutes. This conduct may have been reprehensible, but it falls short of conduct that is "so brutal and so offensive to human dignity" that it gives rise to a substantive due process

violation.  <u>Chavez</u> v. <u>Martinez</u>, 538 U.S. 760, 774 (2003) (quoting <u>Rochin</u> v. <u>California</u>, 342 U.S. 165, 172 (1952)); <u>see</u> <u>also</u> <u>Cummings</u> v. <u>McIntire</u>, 271 F.3d 341, 344 (1st Cir. 2001).  That is so even assuming arguendo that, as plaintiffs assert, Officer Parker's actions were the product of a decade-long campaign of harassment. That fact goes to the intentionality of Officer Parker's conduct on that day in 2002, not its severity.  "[T]he due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." <u>County of Sacramento</u> v. <u>Lewis</u>, 523 U.S. 833, 848 (1998).[19]

The district court also properly held that defendants were entitled to a verdict on the state IIED claim.  The emotional harms Michelle asserted as a result of the 2002 incident involving Officer Parker were feeling "always nervous that I'm going to get arrested," not being able to sleep, and thinking about the incident "all the time" for several months.  As we have discussed with respect to the IIED claims in the first trial, these are not the kind of "severe" emotional harms required to make out an IIED claim under Massachusetts law.  <u>See</u> <u>Bailey</u>, 576 N.E.2d at 1379.

------

[19]  This court has left open the possibility that severe "verbal harassment and intimidation could violate due process." <u>Cruz-Erazo</u> v. <u>Rivera-Montanez</u>, 212 F.3d 617, 623 (1st Cir. 2000). Engaging in a mutual shouting match in which both parties hurled profanities at the other would simply not meet this standard even if we were to assume arguendo that the theory was viable.  <u>Id.</u> at 623-24 (holding that even more severe verbal harassment, including alleged death threats by police officers, did not shock the conscience); <u>see</u> <u>also</u> <u>McConkie</u> v. <u>Nichols</u>, 446 F.3d 258, 261-62 (1st Cir. 2006) (surveying cases).

IV.

Plaintiffs were awarded attorney's fees under 42 U.S.C. § 1988, solely for civil rights claims on which they prevailed in the first trial, namely Mitchell's § 1983 false arrest claim against Officer Tsoukalas and the related <u>Monell</u> liability for the Town on this claim. <u>See</u> <u>Kennedy</u> v. <u>Town of Billerica</u> (<u>Kennedy VI</u>), No. 04-cv-12357, slip op. at 6-7 (D. Mass. Jul. 24, 2008) (order granting attorney's fees). Because we vacate and remand the jury verdict on these claims and order a new trial, we also vacate the district court's award of attorney's fees.

V.

We <u>remand</u> and direct the grant of a new trial to defendants on Mitchell's § 1983 false arrest claim against Officer Tsoukalas for the 2004 incident from the first trial and on the accompanying <u>Monell</u> claim against the Town on the question of its liability for this incident only. We <u>order</u> entry of judgment for the defendants on the IIED claims by Mitchell against Officer Tsoukalas and by Brian Jr. against Chief Rosa from the first trial, as well as the state supervisory negligence claim against the Town.

We also <u>order</u> entry of judgment for defendants on Brian Jr.'s IIED claim against Officer Nestor on the 1993 incident in the second trial. We <u>affirm</u> judgment for Michelle Kennedy on her assault claim against Officer Parker. We <u>vacate</u> the award of

-42-

attorney's fees under 42 U.S.C. § 1988.  No costs are awarded.

So ordered.